IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRUCE W. LITAKER, et al.   *

    Plaintiffs   *

    vs.   *   CIVIL ACTION NO. MJG-11-169

CSX TRANSPORTATION, INC.   *

    Defendant   *

\*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT

The Court has before it Plaintiffs' Motion for Summary Judgment [Document 14], Defendant's Motion for Summary Judgment [Document 15], and the materials submitted relating thereto. The Court finds that a hearing is not necessary.

I.   FACTUAL BACKGROUND

Plaintiff Bruce Litaker ("Litaker") has been employed since 1998 by Defendant CSX Transportation ("CSXT"), the operator of the largest railroad system in the Eastern United States. Plaintiff United Transportation Union (the "Union") is the designated representative under the Railway Labor Act, 45 U.S.C. § 151 et seq., for train service employees and yardmasters employed by CSX.

Litaker was employed as a conductor or locomotive engineer when, on October 11, 2004, CSXT awarded him the position of

substitute yardmaster. After receiving yardmaster training, Litaker began working as a substitute yardmaster as needed in both Brunswick and Hagerstown, Maryland. When Litaker was not needed as a substitute yardmaster, he continued to work as a conductor or locomotive engineer.

Three collective bargaining agreements between the Union and CSXT apply to the instant dispute. The first governs the rates of pay, rules, and working conditions of CSXT "trainmen" employees in the relevant region, the "Trainman Agreement."[1] Trainmen are those employees involved in the operation of trains, such as conductors and locomotive engineers. Yardmasters, on the other hand, supervise train crews when they are working in rail yards or terminals, and their pay, rules, and working conditions are governed by separate agreements. The yardmaster agreements relevant to this dispute are the Yardmaster System Agreement and CSXT Labor Agreement 11-042-05[2] (collectively, the "Yardmaster Agreements"). When Litaker works as a conductor or locomotive engineer, he is covered by the Trainman Agreement, and when he works as a substitute

---

[1] The full title of this agreement is "Agreement between CSXT Transportation, Inc. (former B&O Railroad Company) and United Transportation Union." (Def.'s Mem. Supp. Summ. J. Ex. A.3.)

[2] CSXT Labor Agreement 11-042-05 modified some terms of the Yardmaster System Agreement.

yardmaster, he is covered by the Yardmaster Agreements.

When Litaker began working as a substitute yardmaster in late 2004, Brunswick, Maryland was assigned as his "home terminal." At that time, the local CSXT managers allowed trainmen based in Brunswick, when working as substitute yardmasters in Hagerstown, to receive payment for both travel time and mileage according to the Yardmaster Agreements.[3] Litaker thus filed claims for travel time and mileage when he worked in Hagerstown, and these claims were paid. Litaker would put the travel time on his yardmaster time ticket and claim the mileage reimbursement by filing a "Code 90" request for reimbursement, which was paid automatically through the trainmen payroll system.

In mid-2010, the CSXT Labor Department "became aware that

---

[3] The provisions of the Yardmaster Agreements at issue state:

It is understood and agreed to the following:

(1) Yardmasters required to report to a location/terminal other than their regularly assigned work location/terminal under Article 2(d) of the 2002 System Agreement for purposes such as, but not limited to: training, meetings, seminars, rules class, seminars, witness for an investigation, or other "company business" shall be paid travel/deadhead time in addition to the standard mileage rate.

CSXT Labor Agreement 11-042-05. Article 2(d) of the 2002 System Agreement provides that "[y]ardmasters regularly assigned will have a designated time and place to go on duty and will be relieved at the starting point."

3

employees working as substitute yardmasters at Hagerstown were being paid duplicative payments for both travel time and mileage reimbursement." (Scott Decl. ¶ 7.) It reviewed the Yardmaster Agreements and determined that only regularly assigned yardmasters, and not substitute yardmasters, are entitled to reimbursement for mileage and travel time. Therefore, prior travel payments to trainmen working as substitute yardmasters, such as Litaker, had been made in error.[4] CSXT did not consult with the Union representatives about this contract interpretation.

In October 2010, Litaker was informed twice by his Trainmaster superiors that he was not entitled to travel time or mileage from Brunswick to Hagerstown, and that he should not claim either. Litaker consulted with the senior yardmaster Union representative, Yardmaster General Chairman Richard DeGenova, and continued to believe that he was entitled to travel pay under the Yardmaster Agreements. He therefore continued to file the Code 90 mileage claims, which continued to be paid automatically through the trainmen payroll system.

On November 24, 2010, Litaker received a "notice of

---

[4] Because of the error, the CSXT managers decided that they would not attempt to recover any of the travel pay that had already been approved. But, they decided that, from that time forward, there would be no travel pay allowed for substitute yardmasters traveling from Brunswick to Hagerstown.

investigation" stating that he was being investigated for his continued submission of claims for travel pay after having been told not to do so by his superiors.[5] As of that date, Litaker was suspended from service.

On December 7, CSXT conducted the investigation. The CSXT management witnesses testified that Litaker was insubordinate when he failed to comply with the orders of his superiors. Litaker's Union representative[6] contended that Litaker had a right to continue to submit mileage claims because such claims, if not submitted within 60 days, would be lost, and that CSXT should have denied the Code 90 payroll claims rather than paying

---

[5] Litaker filed 22 additional Code 90 mileage reimbursement requests after being told that he could no longer do so. As a result, a total of $1,276 was automatically disbursed to him through the payroll system.

[6] Litaker was represented at the investigative hearing by Yardmaster Local Chairman Ray Weszka, the representative of his choice. CSXT contends that the violation arose out of Litaker's work as a trainman (and not as a yardmaster) because he made the Code 90 reimbursement requests after being told not to do so through the trainmen payroll system, and thus all procedures in handling Litaker's discipline are governed by the Trainman Agreement. According to CSXT Labor Relations Director Shannon Farling Scott, "he was working as a trainman when he was insubordinate and dishonest." (Scott Decl. Ex. 7.)
The Union contends that the alleged violation arose purely out of Litaker's work as a yardmaster, because the dispute has to do with his work as a substitute yardmaster and the contract at issue in the dispute over whether Litaker is entitled to travel pay is CSXT Labor Agreement 11-042-05 (one of the Yardmaster Agreements). Moreover, the Union argues that it was not properly notified of the investigation.

them automatically.  If it had done so, the Union argued, the dispute would have gone through the conference and arbitration processes.  Litaker testified and stated that Yardmaster General Chairman Richard DeGenova had told him that he was entitled to the travel time and mileage payments.

On January 5, 2011, the CSXT division manager concluded the investigation by finding that Litaker violated CSXT rules by continuing to file travel pay claims after his superiors had told him not to.[7]  Litaker was suspended from service for a total of 60 days, and was reinstated on January 23, 2011.

II.  PROCEDURAL POSTURE

A. Proceedings in this Court

The Plaintiffs filed the instant lawsuit against CSXT on January 20, 2011, seeking preliminary and permanent injunctive relief requiring CSXT to return Litaker to service with pay and benefits for time lost and with all record of discipline expunged.  Plaintiffs' Motion for Preliminary Injunction [Document 3], filed on January 21, 2011, was denied as moot

---

[7]  The investigation concluded that Litaker had violated CSX Transportation Operating Rules General Regulation 2 ("All employees must behave in a civil and courteous manner . . . . Employees must not . . . [b]e disloyal, dishonest, insubordinate . . .") and General Regulation 45 ("Yardmasters report to and receive instruction from trainmasters.  They must also comply with the instructions of other company officers.").

[Document 12] because Litaker's suspension from service ended two days after the motion was filed.

The Parties have filed cross motions for summary judgment. Neither side contends that there is a genuine issue of material fact. Thus, the parties disagree about the application of The Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq., and the interpretation of the collective bargaining agreements but agree that one side or the other would be entitled to summary judgment.[8]

B. Internal Grievance Proceedings

Subsequent to Litaker's discipline, the Union Yardmaster General Chairman filed internal grievances on Litaker's behalf under the procedures set forth in the collective bargaining agreements. Internal grievances have been filed appealing Litaker's discipline, as well as the decision to disallow claims for travel payment.

On June 13, 2011, the Union Yardmaster General Chairman filed an appeal of Litaker's discipline action claiming that CSXT violated Articles 21(a) and (b) of the Yardmaster System

---

[8] A motion for summary judgment shall be granted if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

Agreement by denying Litaker due process.[9] This appeal was denied by CSXT on February 8, 2011 as procedurally defective because the appeal was submitted pursuant to the Yardmaster Agreements and not the Trainman Agreement.[10] CSXT also addressed the merits of Litaker's appeal, and concluded that it failed on the merits as well.

The Union also began filing claims under Article 20 of the Yardmasters System Agreement[11] for mileage reimbursement each

---

[9] Articles 21(a) and (b) govern the procedures for disciplining yardmasters. In relevant part:

> (a) Yardmasters shall not be disciplined, disqualified subsequent to their being qualified, or dismissed without a fair and impartial hearing before a proper officer. Such Yardmaster shall be apprised in writing of the precise charge against him, with copy to the General Chairman, and hearing will be held within fifteen (15) days following the supervisor's first knowledge of the incident. He shall have reasonable opportunity to secure the presence of necessary witnesses and shall have the right to be represented by the duly accredited representative. . . .
>
> (b) A decision shall be rendered within thirty (30) days after completion of the investigation, with copy to the General Chairman and charged Yardmaster.

(Scott Decl. Ex. 1.)

[10] CSXT's position is that the appeal of Litaker's discipline should have been submitted pursuant to the protocol described in Rules 17 and 32 of the Trainman Agreement.

[11] Article 20 is entitled "Claims or Grievances" and it

8

describes the procedure for filing grievances under the
Yardmaster Agreements. In relevant part:

> (a) All claims or grievances must be presented in
>     writing or electronically on the agreed form, if
>     available, by or on behalf of the Yardmaster
>     involved, to the Carrier Officer authorized to
>     receive same, within sixty (60) calendar days from
>     the date of the occurrence on which the claim or
>     grievance is based. . . .
>
> (b) The Yardmaster or the duly authorized
>     representative who files the claim must furnish
>     information on the agreed form, if available, to
>     identify the basis of the claim: (1) Date,
>     claimant's name and employee number. (2) Seniority
>     date. (3) Date of violation. (4) Tour of duty
>     involved. (5) Rules involved, if known. (6) Amount
>     claimed. (7) Details of work performed or
>     opportunity denied. (8) Reasons supporting claim.
>
> (c) Should any claim or grievance be disallowed, the
>     Carrier shall, within sixty (60) calendar days from
>     the date it was filed, notify . . . the Yardmaster
>     or his representative of the reasons for such a
>     disallowance. . . .
>
> (d) If the disallowed claim or grievance is to be
>     appealed, such appeal must be made . . . to the
>     Highest Designated Officer of the Carrier within
>     seventy-five (75) calendar days from date of
>     denial. The Carrier shall, within seventy-five (75)
>     calendar days from the date appeal was receipted
>     notify . . . the Yardmaster or his representative
>     of the reason for the decision. . . .
>
> (e) . . . [I]n cases of appeal from the decision of the
>     Highest Designated Officer . . . [a]ll claims or
>     grievances . . . shall be barred unless within
>     twelve (12) months from the date of said officer's
>     decision [sic] proceeding are instituted by the
>     employee or his duly authorized representative
>     before the appropriate division of the National
>     Railroad Adjustment Board or a system, group or

time Litaker works as a substitute yardmaster.  Between January 13, 2011 and June 20, 2011, the Union Chairman filed 44 claims on Litaker's behalf.  CSXT has handled the claims internally pursuant to Article 20 of the Yardmaster System Agreement.[12]

III. LEGAL FRAMEWORK

Under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq., which governs collective bargaining in the railroad industry, employer-union controversies are generally divided into two categories: major disputes and minor disputes.  Conrail v. Ry. Labor Execs.' Ass'n, 491 U.S. 299, 302 (1989).  In Conrail, the Supreme Court established that when an employer governed by the RLA asserts a contractual right to take a

---

       regional board of adjustment that has been agreed
       to by the parties . . .

(f). . . [N]o monetary claim shall be allowed
    retroactively for more than sixty (60) calendar
    days prior to the filing thereof.

(Scott Decl. Ex. 1.)

[12]    Ten claims were denied at the first and second levels of internal review, thus these 10 claims are ripe for the Union to seek to conference the claims and list them for arbitration.  Another 10 claims have been denied by CSXT at the first level of review but have not yet been appealed by the Union or Litaker to the second level of internal review.  The remaining 24 claims were denied at the first level of internal review but were not timely appealed to the second level of internal review, therefore these 24 claims have expired per the time limits in Article 20.

contested action, the ensuing controversy is a minor dispute if the action is "arguably justified" by the terms of the parties' collective bargaining agreement.[13]  Id. at 307.

Minor disputes are governed by 45 U.S.C. §§ 152 Sixth and 153 First (i).  These sections establish conference and compulsory arbitration procedures for disputes arising out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions.  § 152 Sixth.  When a minor dispute arises, it is subject to compulsory and binding arbitration, and the jurisdiction of the National Railroad Adjustment Board is exclusive.[14]  § 153.  Thus, minor contract interpretation disputes must first be handled in conferences between the carrier and union "in the usual manner," § 153, First (i), according to any agreement as to conferences in effect between

---

[13]  In contrast, major disputes originate from "the formation of collective agreements, efforts to secure them.  They arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy."  Elgin, Joliet & Eastern Ry. Co. v. Burley, 325 U.S. 711, 723 (1945).  Major disputes require the "traditional voluntary processes of negotiation, mediation, voluntary arbitration, and conciliation."  Id. at 725.

[14]  Or other arbitration board agreed to by the parties.  § 153, First (i); Conrail, 491 U.S. at 303.

11

the parties,[15] § 152, Sixth.

As a consequence, United States District Courts lack subject matter jurisdiction over minor disputes under the RLA, United Transp. Union v. S.C. Pub. Ry. Comm'n, 130 F.3d 627, 631-32 (4th Cir. 1997), except to enforce the Adjustment Board's award, Dement v. Richmond, Fredericksburg & Potomac R.R. Co., 845 F.2d 451, 463 (4th Cir. 1988).

IV. DISCUSSION

A. Contentions

Plaintiffs contend that CSXT violated its duties under the RLA when it disciplined Litaker for continuing to file travel mileage claims.[16] In their motion for summary judgment, Plaintiffs state that "CSXT has short circuited the minor dispute resolution process required by the RLA by disciplining an employee who filed disputed [travel pay] claims, in violation of its duty under the RLA to resolve minor disputes in conference or arbitration." (Pls.' Mem. Supp. Summ. J. 9.)

---

[15] CSXT and the Union have established minor dispute resolution and discipline procedures in Articles 20 and 21 of the Yardmaster System Agreement, and in Rules 17 and 32 of the Trainman Agreement.

[16] Plaintiffs, in their Verified Complaint [Document 1], allege that CSXT violated 45 U.S.C. §§ 152, First, Second, Sixth, and 45 U.S.C. §§ 153 First (i).

Thus, under Plaintiffs' theory, "Litaker was disciplined for using the 'minor dispute' resolution procedure that is at the core of the RLA," which, they contend, "is a statutory violation by CSXT that can only [be] remedied by injunctive relief." (Pls.' Mem. Resp. Def.'s Mot. Summ. J. 1.)  Plaintiffs contend that there is no genuine dispute as to any material fact and that Plaintiffs are entitled to judgment as a matter of law.

CSXT argues that it did not discipline Litaker for pursuing the dispute resolution procedures prescribed by the RLA for resolving minor disputes, rather, it disciplined Litaker for insubordination pursuant to the collective bargaining agreements after he disobeyed the direct instructions of his supervisors when he continued to seek mileage reimbursement through the payroll system.  According to CSXT, Litaker should have disputed CSXT's determination that he was not entitled to travel pay by following the protocol in the Yardmaster System Agreement Article 20 and filing a time claim or grievance with the designated official, rather than by continuing to file travel pay claims through the payroll system.  CSXT contends that Plaintiffs mistakenly conflate Litaker's right to file grievances or claims under Article 20 with his asserted right to file Code 90 payroll claims for reimbursement.

By failing to follow the grievance protocol in Article 20,

CSXT argues that Litaker failed to follow the "well-settled arbitral doctrine of 'obey now, grieve later.'" (Def.'s Mem. Supp. Summ. J. 12-14.) CSXT urges the Court to find that the entire dispute is a "minor dispute" under the Railway Labor Act, and that therefore, this Court lacks subject matter jurisdiction to hear the dispute. Finally, CSXT argues that Plaintiff Litaker lacks standing to enforce his claims under 45 U.S.C. §§ 152, First, Second, and Sixth because those provisions do not provide for a private right of action.

In the instant case there are two underlying disputes: first, CSXT determined that Litaker is not entitled to travel pay, and second, Litaker was disciplined for continuing to file payroll claims for travel pay after being told not to do so. These disputes will be discussed in turn.

### B. Travel Pay Entitlement

The parties agree that the dispute, insofar as it relates to CSXT's determination that Litaker is not entitled to travel pay, is a minor dispute because it arises out of and is arguably justified by the terms of the collective bargaining agreement. See Conrail, 491 U.S. at 307. The provisions of the Yardmaster Agreements at issue state:

It is understood and agreed to the following:

> (1) Yardmasters required to report to a location/terminal other than their regularly assigned work location/terminal under Article 2(d) of the 2002 System Agreement for purposes such as, but not limited to: training, meetings, seminars, rules class, seminars, witness for an investigation, or other "company business" shall be paid travel/deadhead time in addition to the standard mileage rate.

CSXT Labor Agreement 11-042-05. Article 2(d) of the 2002 System Agreement provides that "[y]ardmasters regularly assigned will have a designated time and place to go on duty and will be relieved at the starting point."

In October 2010, CSXT asserted a contractual right under these provisions when it determined that only regularly assigned yardmasters, and not substitute yardmasters, are entitled to reimbursement for mileage and travel time. With respect to Litaker, CSXT's position is that "[Litaker] is an unassigned yardmaster, which by definition is an individual who has acquired Yardmaster seniority . . . but is not regularly assigned to a position. By definition, unassigned yardmasters have no regularly assigned reporting location as yardmaster." (Scott Decl. Ex. 10 (citing Yardmaster System Agreement Art. 1).)

In Plaintiffs' view, CSXT Labor Agreement 11-042-05 "plainly entitles Litaker to the mileage claimed when employed as a substitute yardmaster." Plaintiffs, however, agree that

CSXT's position is "arguable," and that therefore, this dispute can be resolved "only in arbitration." (Pls.' Mem. Resp. Def.'s Mot. Summ. J. 3.)

This Court agrees with the Parties that CSXT's determination that substitute yardmasters are not entitled to travel pay under the Yardmaster Agreements is arguably justified by the terms of those agreements. Therefore, Litaker's claims for travel pay constitute a minor dispute that is within the exclusive jurisdiction of the National Railroad Adjustment Board. Thus, thus the Court lacks jurisdiction over the matter.

### C. Discipline

The question before the Court is whether CSXT violated the RLA when it disciplined Litaker for continuing to submit travel pay claims. The relevant procedures for employee discipline are set forth in Article 21 of the Yardmaster System Agreement and Rule 17 of the Trainman Agreement.

Generally, disputes over employee discipline are considered minor disputes under the RLA because they arise from the discipline procedures in the collective bargaining agreement. See Andrews v. Louisville & Nashville R.R. Co., 406 U.S. 320, 325 (1972) (holding that Congress intended the RLA dispute resolution mechanism to be mandatory for a wrongful discharge

claim based squarely on an alleged breach of the collective bargaining agreement); Conrail, 491 U.S. at 307; Bhd. Of Locomotive Eng'rs Div. 269 v. Long Island R.R. Co., 85 F.3d 35, 38 (2d Cir. 1996) (holding that dispute over whether employer had an implied right under the collective bargaining agreement to impose disciplinary fines was a minor dispute and subject to the exclusive jurisdiction of the National Railroad Adjustment Board).

Plaintiffs argue that Litaker was impermissibly disciplined for using the minor dispute resolution procedure, and implicit in their argument is the assumption that filing a Code 90 trainmen payroll claim is part of the minor dispute resolution procedure itself.[17] They contend that this issue "cannot be resolved in arbitration because it does not involve interpretation of an agreement. It involves application of the Act itself." (Pls.' Reply to Def.'s Opp'n Mot. Summ. J. 4.)

CSXT, on the other hand, argues that Litaker's discipline was proper under the Trainman Agreement and that Litaker was not disciplined for exercising his right to make a claim under the collective bargaining agreements. It contends that a Code 90 payroll claim is not a "claim" within the meaning of the Article

---

[17]  Plaintiffs note that "Article 20 obviously applies to the claims Litaker filed, and CSXT could have denied them." (Pls.' Reply to Def.'s Opp'n Mot. Summ. J. 3.)

20 dispute resolution procedure of the Yardmaster System Agreement – rather, it is a wholly distinct action that is not part of any collective bargaining agreement dispute resolution process. CSXT has submitted a declaration from CSXT Labor Relations Director Shannon Farling Scott explaining the difference between an Article 20 claim and a Code 90 claim, as well as samples of Code 90 claims. CSXT notes that "if Plaintiffs really are arguing that Litaker was disciplined for filing a time claim under Article 20, it is CSXT's position that he was disciplined for submitting Code 90 claims to the trainmen payroll system." (Def.'s Opp'n Pls.' Mot. Summ. J. 9.)

This Court finds that this dispute over Litaker's discipline is a minor dispute because its resolution requires the interpretation of collective bargaining agreements. The dispute implicates the discipline procedures of Article 21 of the Yardmaster System Agreement and Rule 17 of the Trainman Agreement, and appears to turn on the interpretation of "claim" under Article 20 of the Yardmaster System Agreement. In relevant part, Article 20 provides:

> (a) All claims or grievances must be presented in writing or electronically on the agreed form, if available, by or on behalf of the Yardmaster involved, to the Carrier Officer authorized to receive same, within sixty (60) calendar days from the date of the occurrence on which the claim or grievance is based. . . .

18

> (b) The Yardmaster or the duly authorized representative who files the claim must furnish information on the agreed form, if available, to identify the basis of the claim: (1) Date, claimant's name and employee number. (2) Seniority date. (3) Date of violation. (4) Tour of duty involved. (5) Rules involved, if known. (6) Amount claimed. (7) Details of work performed or opportunity denied. (8) Reasons supporting claim.

(Scott Decl. Ex. 1.) Article 20 requires that the basis of the claims or grievances be explained and sent to the appropriate CSXT officer, whereas a Code 90 payroll claim is a simple computerized input of travel pay value into the trainmen payroll system. Therefore, CSXT's interpretation that the Code 90 payroll claims are not claims or grievances within the meaning of Article 20, and that Litaker's discipline under the collective bargaining agreements was therefore proper, is arguably justified. See Conrail, 491 U.S. at 307.

Thus, this Court finds that the discipline dispute is a minor dispute under the RLA and is within the exclusive jurisdiction of the National Railroad Adjustment Board. Therefore, the Court lacks subject matter jurisdiction to consider the merits of the discipline dispute.[18]

---

[18] Because this Court has found that it does not have jurisdiction in this matter, it does not reach CSXT's argument that Plaintiff Litaker lacks standing to enforce his claims under 45 U.S.C. §§ 152, First, Second, and Sixth because those provisions do not provide for a private right of action.

Plaintiffs have already commenced the internal appeal procedure, and as they exhaust their claims at the internal level of review, they are able to proceed to conference and binding arbitration before the National Railroad Adjustment Board or other agreed-upon adjustment board, according to the procedures set forth in the collective bargaining agreements and the RLA. Because CSXT is arguably justified in its interpretation of the relevant provisions of the collective bargaining agreements, Plaintiffs' contention that this court should issue equitable relief to require CSXT's compliance with its duties under the RLA is unavailing.

V. CONCLUSION

For the foregoing reasons:

1. Plaintiffs' Motion for Summary Judgment [Document 14] is DENIED.

2. CSXT's Motion for Summary Judgment [Document 15] is GRANTED.

3. Judgment shall be entered by separate Order.

SO ORDERED, this Tuesday, October 11, 2011.

/s/
Marvin J. Garbis
United States District Judge